IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MICHAEL MINTON,
      Plaintiff,

vs.                                   Case No. 5:10cv61/RH/EMT

NURSE JENKINS et al.,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff, a prisoner proceeding pro se and in forma pauperis, commenced this action by filing a civil rights complaint under 42 U.S.C. § 1983 (Doc. 1).  In his Second Amended Complaint, Plaintiff names five Defendants and claims that Defendants deprived him of adequate medical treatment, in violation of the Eighth Amendment (Doc. 24).

      Defendants Jenkins, Parker, and Arunakul filed a Motion to Dismiss and Request for Sanctions, with a memorandum of law and supporting materials (Doc. 79).  Defendants contend Plaintiff's complaint should be dismissed because he failed to disclose his complete litigation history on the complaint form, as it requires (*id.* at 6–10).  They contend Plaintiff's lack of candor warrants imposition of sanctions (*id.*).  Defendants additionally contend they are entitled to immunity from Plaintiff's claims for monetary damages against them in their official capacities (*id.* at 10–11).

      Because Defendants presented matters outside the pleadings, the court treated the motion to dismiss as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  The court advised the parties of the importance and

ramifications of Rule 56 summary judgment consideration, informed the parties of the requirements of materials that may be considered on summary judgment, and directed Plaintiff to respond to the motion (Doc. 80).  Plaintiff filed a response with supporting materials (Doc. 83).  Defendants, upon obtaining leave of court, filed a reply (*see* Docs. 85, 86, 88).

Upon review of the record, it is the opinion of the undersigned that Defendants' motion to dismiss should be granted.

## I.    MATERIAL FACTS

The court conveys only those facts that are material to the issues raised in Defendants' motion to dismiss.  The court draws the facts from the pleadings and other evidentiary materials on file.  Additionally, the court takes judicial notice of the public dockets of cases filed by Plaintiff in other federal judicial districts.  *See* Fed. R. Evid. 201; *see also* <u>United States v. Berrojo</u>, 628 F.3d 368 (5th Cir. 1980) ("The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it."); *see also, e.g.*, <u>Fernandez-Morales v. Barron</u>, No. 5:06cv1/MCR/EMT, 2006 WL 680819, at *2 (N.D. Fla. Mar. 13, 2006) (unpublished) (district court may take judicial notice of public docket of case in other federal judicial district).  As this case comes before the court on Defendants' motion to dismiss or for summary judgment, the court views the facts in the light most favorable to Plaintiff, the non-moving party, *see* <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993).

Section IV of the complaint form requires Plaintiff to disclose information regarding prior civil cases he filed in state and federal court (*see* Doc. 24 at 3–4).[1]  Question C of Section IV asks, "Have you initiated other actions . . . in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?" (*id.* at 4).  Where there is a parenthetical area to mark either a "yes" or "no" answer to this question, Plaintiff marked "yes" (*id.*).  Plaintiff then disclosed <u>Minton v. Spann</u>, Case No.

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

5:05cv89/RS/WCS, filed in this Court in 2005, and <u>Minton v. County of Volusia</u>, Case No. 6:08cv1668, filed in the Middle District of Florida in 2008 (*id.* at 4–5).  Plaintiff thus stated that he has <u>not</u> initiated any actions in either state or federal court that relate to the fact or manner of his incarceration or the conditions of his confinement, except those two cases.  At the end of the civil rights complaint form, Plaintiff signed his name after the following statement on the form:  "**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.**" (*id.* at 25).

Sybil Andrew, a Corrections Sentence Specialist and Inmate Records Supervisor with the Florida Department of Corrections ("FDOC"), received documents from the New York Department of Corrections ("NYDOC") concerning a New York inmate named Michael Minton (Doc. 79, Ex. A, Affidavit of Sybil Andrew).  She compared the documents with Plaintiff's FDOC records to determine if the inmates were the same individual (*id.*).  The documents included (1) a photograph of New York inmate Michael Minton, Inmate No. 97A2429, which included his date of birth, (2) a Certificate of Incarceration detailing incarcerations in the NYDOC for Michael Minton, Inmate Nos 92A2215 and 97A2429, (3) a NYDOC document with a photograph of Michael Minton, Inmate No. 97A2429, which included his criminal charges, dates of incarceration, date of birth, and place of birth (Florida), and (4) a fingerprint card with a class code (*see* Doc. 79, Ex. A, Andrew Aff. and Ex. B).  Ms. Andrew determined that Plaintiff is the same person as New York inmate Michael Minton (*see* Doc. 79, Ex. A, Andrew Aff.).

Plaintiff acknowledges he filed lawsuits in New York in 1995, 1996, and 1997 (*see* Doc. 83 at 2, Affidavit of Michael Minton).  According to records of the government web site PACER (Public Access to Court Electronic Records), Plaintiff filed four lawsuits in New York federal courts in 1995, 1996, and 1997.  On or about December 13, 1995, Plaintiff filed <u>Minton v. State of New York, et al.</u>, Case No. 1:95cv10468-TPG, in the United States District Court for the Southern District of New York (*see* attached docket, Case No. 1:95cv10468-TPG).  According to records of the NYDOC, Plaintiff was incarcerated at that time (Doc. 79, Ex. B, Certificate of Incarceration).  The lawsuit related to the conditions of Plaintiff's confinement, as evidenced by Plaintiff's naming

the librarian of the Downstate Correctional Facility as a defendant (*see* attached docket, Case No. 1:95cv10468-TPG).

On or about January 23, 1996, Plaintiff filed <u>Minton v. Solomon, et al.</u>, Case No. 1:96cv450-TPG, in the United States District Court for the Southern District of New York.  According to the docket of that case, Plaintiff was incarcerated at the Auburn Correctional Facility when he filed the case (*see* attached docket, Case Nos. 1:96cv450-TPG).  The case was immediately transferred to the Eastern District of New York, Case No. 1:96cv406-RLM (*see* attached docket, Case No. 1:96cv406-RLM).  Plaintiff named several parole officers as defendants, and he acknowledges that his claims related to a use of excessive force by those officers (*see* Doc. 83, Minton Aff.).[2]

On or about June 24, 1996, Plaintiff filed <u>Minton v. Warden of Suffolk County Cor. Fac., et al.</u>, Case No. 1:96cv04686-TPG (*see* attached docket, Case No. 1:96cv04686-TPG).  Plaintiff was incarcerated when he filed the case.[3]  The case was immediately transferred to the Eastern District of New York, Case No. 0:96cv3171-ARR (*see* attached docket, Case No. 0:96cv3171-ARR). The lawsuit related to the conditions of Plaintiff's confinement, as evidenced by his naming the Warden of the Suffolk County Correctional Facility and correctional officers at the facility as defendants. Further, Plaintiff acknowledges he filed a lawsuit in New York against a county or county correctional officer concerning an officer's assaulting him at the county jail (*see* Doc. 83, Minton Aff.).

On or about July 22, 1997, Plaintiff filed <u>Minton v. Pataki, et al.</u>, Case No. 6:97cv1038-FJS-DH, in the Northern District of New York (*see* attached docket, Case No. 6:97cv1038-FJS-DH).  Plaintiff was incarcerated when he filed the lawsuit (*see* Doc. 79, Ex. B, Certificate of Incarceration; *see also* attached docket, Case No. 6:97cv1038-FJS-DH).  The lawsuit related to the conditions of Plaintiff's confinement, as evidenced by his naming the wardens of two NYDOC correctional facilities as defendants.

---

[2] Although this case may not have technically qualified as relating to the fact or manner of Plaintiff's incarceration or the conditions of his confinement, the other three New York cases qualified as such.  The undersigned mentions Case No. 1:96cv406-RLM to show the volume of undisclosed cases previously filed by Plaintiff.

[3] According to docket entries in <u>Minton v. Solomon</u>, Case No. 1:96cv406-RLM, dated June 3 and June 26, 1996, Plaintiff was in custody from at least June 3, 1996, and not scheduled for release until August 6, 1996 (*see* attached docket, Case No. 1:96cv406-RLM).

Plaintiff did not list any of the above-mentioned cases in Section IV of his original complaint or either of his amended complaints (*see* Docs. 1, 15, 24) even though the cases qualified as a federal court actions that were responsive to Question C, and thus should have been included in Plaintiff's answer to that question.

In Plaintiff's response to Defendants' motion to dismiss, he states he did not intend to provide a false response on the complaint form; he simply forgot about the New York cases (Doc. 83 at 3–4, Minton Aff.). He states his long-term memory is affected by his "mental health disease" for which he takes daily psychotropic medication and has been classified "Psych Grade-3" (*id.*). He further states the injury to his head on November 19, 2009 (which is the subject of the instant lawsuit) also affected his long term memory; and he is now realizing the extent of his memory loss (*id.*). Plaintiff submitted a declaration of fellow inmate Steven Baer (Doc. 83, Affidavit of Steven Baer). Inmate Baer states he witnessed the event on November 19, 2009, which caused Plaintiff's injury (*id.*). Baer states he has known Plaintiff for a number of years and has noticed degeneration in Plaintiff's hearing and memory since the injury (*id.*).

Plaintiff additionally states he did not know that Question IV applied to lawsuits filed in another state over a decade ago, and he did not have any specific information about the cases that he could have provided (Doc. 83 at 3–4). He asserts attorneys filed the lawsuits on his behalf, and he did not recall that the lawsuits were civil rights complaints (*id.*).

In Defendants' reply, they submitted an affidavit of Dr. Ronald Solorzano-Pallais, a licensed medical doctor currently employed by the FDOC as the Regional Medical Executive Director of Northern Florida (Doc. 88, Ex. A, Affidavit of Ronald Solorzano-Pallais). Dr. Solorzano-Pallais reviewed Plaintiff's medical records related to the injuries he received on November 19, 2009, including records of Plaintiff's treatment at the Reception Medical Center ("RMC"), Jacksonville Memorial Hospital, and Apalachee Correctional Institution ("ACI") (*id.*). Plaintiff's medical records show that two days after the injury, Plaintiff told the treating physician at RMC that he lost consciousness during the incident that caused his injury (*id.*). Based upon Plaintiff's report of loss of consciousness, he was diagnosed with post concussive syndrome ("PCS") (*id.*). Plaintiff was sent to Jacksonville Memorial Hospital and received a CAT scan (*id.*). Plaintiff's CAT scan was unremarkable; no hemorrhage or edema was noted, there was no fracture, the posterior fossa and

brainstem were normal, and the ventricles were normal in size (*id.*).  A serious head injury is not indicated with such findings (*id.*).  While Plaintiff had outwardly visible bruising and lacerations, his brain was not injured (*id.*).  Plaintiff's treating physical at Jacksonville Memorial Hospital was Dr. Kasra Nabizadeh, who is certified in internal medicine, including neurological issues (*id.*).  Dr. Nabizadeh discharged Plaintiff on November 23, 2009, after determining Plaintiff did not require surgery, and he neurologically had no focal deficit (*id.*).  Dr. Nabizadeh could not have discharged Plaintiff if he had any bleeding or a fracture, because surgery would have been necessary to relieve pressure on the brain (*id.*).  Plaintiff's medical records show that while he was at ACI, RMC, and Jacksonville Memorial Hospital, he was alert and oriented (*id.*).  Based upon Plaintiff's medical records, Dr. Solorzano-Pallais opines there is no medical basis for Plaintiff's claim that his head injury caused memory loss (*id.*).

II.     ANALYSIS

As routinely recognized by this court (and as recognized by Plaintiff), the information from Section IV of the form is useful to the court in many ways:

> . . . it allows efficient consideration of whether the prisoner is entitled to pursue the current action under the "three strikes" provision of the Prison Litigation Reform Act; it allows consideration of whether the action is related to, or otherwise should be considered in conjunction with or by the same judge who presided over, another action; it allows consideration of whether any ruling in the other action affects the prisoner's current case.   All of these things are appropriately considered in connection with the preliminary review of such a complaint under the Prison Litigation Reform Act.

Spires v. Taylor, Order of Dismissal, Case No. 3:00cv249/RH (N.D. Fla. Oct. 27, 2000).  Further, since prisoner plaintiffs generally proceed pro se, the information helps the court determine their litigation experience and familiarity with the legal terrain of the current action.  The time spent verifying the cases a plaintiff has filed but failed to identify, as well as the dispositions of those cases, can be considerable.

Plaintiff contends his failure to identify his New York cases did not hinder the judicial process or prejudice Defendants (Doc. 83 at 3–4).  He argues his non-disclosure did not compromise the purposes of Question IV because:  (1) he is not a "three striker," (2) this case is not related to any of the New York cases, and (3) disclosure of the prior cases would not have assisted the court

in determining his familiarity with the judicial process, since he was represented by counsel in each of the New York cases (*id.* at 4–5). Plaintiff contends dismissal of this case as a sanction would be unjust because Defendants' deliberate indifference to his medical needs caused mental, visual, and hearing impairments (*id.* at 5).

The court has authority to control and manage matters such as this pending before it, and Plaintiff's pro se status does not excuse him from conforming to acceptable standards in approaching the court. If the court cannot rely on the statements or responses made by the parties, the quality of justice is threatened. The court will not tolerate false responses or statements in any pleading or motion filed before it. Here, Plaintiff falsely responded to questions on the complaint form, as detailed above. Plaintiff knew, or from reading the complaint form should have known, that disclosure of all his prior actions was required, and dismissal of the action may result from his untruthful answers.[4]

The hindrances to full disclosure enumerated by Plaintiff are insufficient to excuse his failure to disclose. He states he had no records of the New York cases, in part because attorneys filed the cases for him. However, the dockets of his New York cases show that although counsel appeared for Plaintiff in Case No. 0:96cv3171-ARR, Plaintiff filed and litigated the case pro se for over nineteen (19) months prior to counsel's appearance (*see* attached dockets). Additionally, counsel appeared for Plaintiff in Case No. 1:96cv406-RLM, but the representation began seven months after Plaintiff filed the case pro se (*see* attached docket). Plaintiff was not represented by counsel in either of the other two cases he filed, Case No. 1:95cv10468-TPG or Case No. 6:97cv1038-FJS-DH (*see* attached dockets).

Additionally, Plaintiff's assertion of memory loss is not convincing. Dr. Solorzano-Pallais's opinion that there is no medical basis for Plaintiff's claim of memory loss relating to his head injury is persuasive. Furthermore, the litigation histories and dispositions of Case Nos. 1:96cv406 and 0:96cv3171-ARR are far from forgettable. The litigation in each of those two cases spanned over

---

[4] Indeed, section IV of the complaint form includes the following notice: "FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL." (*see* Doc. 24 at 3) (emphasis and capitalization in original).

two and a half years.  Case No. 1:96cv406-RLM resulted in a jury verdict in favor of the defendants following a <u>four-day jury trial</u> in 1998 (*see* attached docket).   In Case No. 0:96cv3171-ARR, Plaintiff reached a settlement with the defendants (the Sheriff of Suffolk County, the Warden of the Suffolk County Correctional Facility, and three correctional officers at the facility).  It is difficult to believe that Plaintiff could not recall participating in either of those cases.

Finally, the court in unpersuaded by Plaintiff's argument that he should not be sanctioned because his failure to identify his New York cases did not hinder the judicial process or prejudice Defendants.  If Plaintiff suffered no penalty for his untruthful responses, there would be little or no disincentive for his attempt to evade or undermine the purpose of the form.  Furthermore, if word spread around the prisons that the questions on the complaint form could be circumvented in such a manner, the court might be confronted with widespread abuse from its many prisoner litigants. Therefore, this court should not allow Plaintiff's false responses to go unpunished.

The court recommends that an appropriate sanction for Plaintiff's abuse of the judicial process in not providing the court with true factual statements or responses is to dismiss this cause <u>without</u> <u>prejudice</u> for abuse of the judicial process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).[5]  *See, e.g.,* <u>Shelton v. Rohrs</u>, 406 Fed. Appx. 340, 340–41 (11th Cir. 2010) (unpublished) (affirming district court's dismissal without prejudice of civil rights case under § 1915(e)(2)(B)(i) for abuse of judicial process where court's case management system showed plaintiff had filed at least four previous civil actions which he failed to disclose on complaint form, and rejecting plaintiff's explanation that he did not remember filing civil suits, and his records were unavailable to him; plaintiff would have known that he filed multiple previous lawsuits); <u>Young v. Sec'y Fla. Dep't of Corr.</u>, 380 Fed. Appx. 939, 940–41 (11th Cir. 2010) (unpublished) (affirming district court's dismissal without prejudice of civil rights case under § 1915(e)(2)(B)(i) as sanction for plaintiff's failure to fully disclose prior lawsuits on complaint form; hindrances identified by plaintiff, including no access to documents necessary to answer fully, did not absolve him of requirement of

---

[5] Dismissal without prejudice is not too severe a sanction under these circumstances.  The four-year limitations period for re-filing this action does not expire until November of 2013; therefore, dismissal does not prevent Plaintiff from re-filing this matter if he so chooses.  *See* Order of Dismissal, <u>Spires</u>, No. 3:00cv249-RH (N.D. Fla. Oct. 27, 2000).

disclosing, at a minimum, all information known to him).[6]  Plaintiff should also be warned that such false responses, filed herein or filed in the future, will not be ignored and may result in more severe and long-term sanctions.  *See* Warren v. Guelker, 29 F.3d 1386, 1389 (9th Cir. 1994) (per curiam) (pro se, in forma pauperis prisoner's misrepresentation about previous lawsuits may violate Rule 11).

Accordingly, it is respectfully **RECOMMENDED**:

1.  That Defendants Jenkins, Parker, and Arunakul's motion to dismiss (Doc. 79) be **GRANTED**.

2.  That this action be **DISMISSED without prejudice** for Plaintiff's abuse of the judicial process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

At Pensacola, Florida, this 27th day of May 2011.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**

---

[6] The undersigned cites Shelton and Young  only as persuasive authority and recognizes that the opinions are not considered binding precedent.  *See* 11th Cir. R. 36-2.